Elizabeth J. VALENTE et al., Plaintiffs,

v.

PEPSICO, INC. et al., Defendants.

Civ. A. No. 4537.

United States District Court,
D. Delaware.

Jan. 27, 1981.

Richard I. G. Jones, James L. Holzman, and Michael J. Hanrahan, Prickett, Jones, Elliott & Kristol, Wilmington, Del., for plaintiffs; Harold E. Kohn, of Kohn, Savett, Marion & Graf, Philadelphia, Pa., Herbert E. Milstein, and Glen DeValerio, of Kohn, Milstein & Cohen, Washington, D. C., of counsel.

Richard J. Abrams, of Richards, Layton & Finger, Wilmington, Del., for intervening plaintiff, James G. Ryan.

Alfred M. Isaacs, of Flanzer & Isaacs, Wilmington, Del., for intervening plaintiffs, George Pope and Andrew Dimitriou.

Hugh L. Corroon, and James F. Burnett, of Potter, Anderson & Corroon, Wilming-

ton, Del., for defendants; Arthur S. Friedman, and Peter N. Wang, of Friedman & Gass, New York City, of counsel.

William H. Sudell, Jr., and Thomas John Allingham, II, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for claimant Yale University.

Andrew B. Kirkpatrick, Jr., and Thomas John Allingham, II, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for claimant First Nat. Bank in Dallas; Ernest E. Figari, Jr., and Storrow Moss Gordon, of Hewett, Johnson Swanson & Barbee, Dallas, Tex., of counsel.

Roderick R. McKelvie, of Robinson, McKelvie & Geddes, Wilmington, Del., for claimant Kidder, Peabody & Co., Inc.

Jack B. Jacobs, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for claimant Northwestern National Bank of Minneapolis.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

In the latest phase of this protracted litigation, the Court is called upon to adjudicate defendants' challenges to claims filed pursuant to a class action settlement agreement. Under the agreement, the Court is charged with resolving disputes as to the validity of claims. Because defendants have a reversionary interest in the settlement fund, defendants seek to limit the number of claims that the Court allows. On defendants' view, the claims procedure is an obstacle course, where claimants who concededly would be eligible to participate in the settlement should be disqualified for failure to clear all the procedural hurdles. Plaintiffs, on the other hand, argue that a more liberal approach to the issue of compliance with the claims procedure is appropriate, in keeping with the tradition of equitable administration of settlements. The Court concludes that the explicit terms of the settlement agreement pertaining to filing of claims should be enforced, and that

principles of equity control where the agreement is silent.

### I.  *Factual Background*

The settlement in this case grew out of a lawsuit brought in 1972. Plaintiffs alleged that the defendants, PepsiCo, Inc. ("PepsiCo"), Wilson Sporting Goods ("Wilson"), and certain of their officers and directors violated federal and state securities laws in connection with PepsiCo's tender offer for Wilson securities, and the subsequent merger of Wilson into PepsiCo. In 1973, the Court certified a class in the case.[1] After the Court granted partial summary judgment for plaintiffs, *see Valente v. PepsiCo, Inc.*, 454 F.Supp. 1228 (D.Del.1978), the parties entered into a Stipulation and Agreement of Settlement ("Settlement Agreement") on January 19, 1979. The Settlement Agreement provided that, in exchange for the dismissal of plaintiffs' legal claims against defendants, defendants would establish a Settlement Fund of $4.5 million, from which would come counsel fees, settlement expenses, and "payment to claimants who submit verified proofs of claim and execute releases." *See* Dkt. 310, Exhibit A, at 5. The agreement set out a formula controlling the proportion of the fund on which various subclasses of claimants could draw. The agreement provided that "[a]ny balance remaining in the Settlement Fund after the above payments have been made will be returned to the defendants . . . ." *Id.*

The Court preliminarily approved the Settlement Agreement in its Order of February 1, 1979, *see* Dkt. 310. The Order directed that notice of the proposed settlement and copies of the claim form be sent on February 15 to members of the class; that objections to the Settlement Agreement be filed by April 16; and that there be a hearing before the Court as to the fairness of the agreement on May 16. Though these dates were negotiated by the parties, the parties were unable to agree on the period that should be allowed for filing

---

1. The class is comprised of "all persons who owned shares of common stock, or warrants, or debentures of Wilson Sporting Goods Company on July 26, 1972, with the exception of

PepsiCo, Inc. and the individual defendants named herein." Order of August 17, 1973, Docket No. 57. Docket entries will hereinafter be cited as "Dkt.___".

of claims. Plaintiffs wanted a period of eighty to ninety days, while defendants sought a sixty day deadline. In a January 31 conference with the parties, the Court suggested that class members be given seventy-five days to file claims, to which both parties agreed. *See* Affidavit of Arthur Friedman, Dkt. 318, at 6–7. Accordingly, the Order set May 1, 1979 as the deadline for filing of claims, seventy-five days after the notices were to be mailed to class members.[2]

The Notice of Proposed Settlement that was sent to class members with the claim form sketched the details of the agreement, instructed class members to file objections by April 16, 1979, and notified them of the May 16 hearing on the settlement. *See* Dkt. 310, Exhibit D. The notice alluded to the claims procedure only in the penultimate sentence:

IF YOU WISH TO SHARE IN THE BENEFITS OF THE PROPOSED SETTLEMENT, YOU MUST SUBMIT YOUR VERIFIED PROOF OF CLAIM IN SUBSTANTIALLY THE FORM ENCLOSED HEREWITH.

The notice concluded by giving the address to which claims were to be mailed. Neither the claim form nor the notice mentioned the May 1 filing deadline.[3]

The claim form and the notice were mailed to class members on February 15, as planned. Shortly thereafter, plaintiffs' counsel realized that the deadline had been omitted, and on March 1 a second notice was mailed to class members informing them of the May 1 deadline.

Plaintiffs' counsel subsequently moved to extend the filing deadline from May 1, 1979 to July 2, 1979 for "those claimants whose correct present addresses have not yet been ascertained," *see* Dkt. 314 at 1, on the basis that it was taking longer than expected to find current addresses for some members of the class. After oral argument, the Court denied the motion, *see* Memorandum Opinion of May 1, 1979, Dkt. 320, holding that it would be unfair to defendants to extend the filing period beyond the seventy-five days agreed to by the parties. *Id.* at 3.

The Court held a hearing on May 16, 1979, at which no objections were heard from members of the class as to the fairness of the Settlement Agreement. *See* Dkt. 328, at 2. Defendants spoke against approval of the settlement at the May 16

2. Paragraph 8 of the February 1 Order set out the claims procedure in full:

The following provisions are for the purpose of determining the claims of each member of the class:

(a) Any claimant desiring to participate in the distribution of the Settlement Fund must execute and file a Verified Proof of Claim Form, in the form attached hereto as Exhibit "D" [sic], on or before May 1, 1979, at the following address:

Office of the Clerk
United States District Court, District of Delaware
Post Office Box 586
Wilmington, Delaware 19899

(b) Any claimant who fails to execute and file a Verified Proof of Claim in the manner set forth in this paragraph 8 shall be deemed to have waived his right to participate in the Settlement Fund, but will in all other respects be subject to any Order or Final Judgment entered in this action.

(c) A Proof of Claim shall be deemed to have been filed when posted.

(d) Each person filing a Proof of Claim shall be deemed to have submitted to the jurisdiction of this Court. The information contained in any Proof of Claim is subject to investigation and discovery pursuant to the Federal Rules of Civil Procedure, and a claimant may be required to furnish additional information to support his Proof of Claim.

(e) All Proofs of Claim will be subject to review and investigation by the Settlement Committee Representatives. A Proof of Claim will be deemed accepted unless challenged in writing and delivered to all Settlement Committee Representatives no later than 20 days after the last day for the filing of Proofs of Claim. All challenged claims shall be submitted to this Court for determination, and notice of the filing of said challenge, and of any hearing thereon scheduled by this Court, shall be given to each claimant whose claim is so challenged, in whole or in part.

3. The May 1 deadline was included in the Legal Notice Regarding Proposed Settlement, which was published in the Wall Street Journal on March 9, March 22, and April 2, 1979. *See* Dkt. 324, Exhibit A.

hearing, contending that plaintiffs' motion to extend the filing deadline constituted an attempt unilaterally to change the agreement. *See* Dkt. 328, at 25. The Court entered an Order on June 4, Dkt. 331, approving the settlement and awarding counsel fees. Defendants then appealed the June 4 Order. The Third Circuit dismissed the appeal for want of appellate jurisdiction, on the ground that "[t]he district court improvidently entered a F.R.C.P. 54(b) determination as to the approval of the class settlement agreement." *Valente v. Pepsi-Co, Inc.,* 614 F.2d 772 (3d Cir. 1980).

As required under the Settlement Agreement, defendants filed written objections to the claims they challenged by May 21, 1979. Some claimants had already been notified of defects in their claims. The Court subsequently directed defendants to notify all claimants whose claims were disputed of the specific objections. Notices of Challenge were mailed on April 16, 1980, and claimants were given one month to file additional documentation, though it remained an open question whether the Court would consider the supplementary filings in every case. Two hearings were held in June, 1980, at which claimants were given an opportunity to respond to defendants' challenges. Defendants were then allowed limited discovery of various claimants. In September, defendants filed a Motion to Vacate Approval of Settlement, which the Court denied after oral argument. *See* Dkt. 434. Most recently, defendants moved that the Court enforce an oral settlement agreement which, they contended, the parties had arrived at in negotiations. The Court held that no agreement had been reached. *See* Memorandum Opinion of Dec. 24, 1980, Dkt. 445, at 6.

## II. *Legal Issues*

Defendants have filed challenges to a large number of the claims,[4] which the Court must resolve pursuant to ¶ 8(e) of its February 1 Order. The challenges raise several issues that bear on all of the disputed claims:

(1) should those who filed timely requests for exclusion from the class be permitted to participate in the settlement?

(2) when did the seventy-five day filing period begin and end?

(3) what information were claimants required to provide by the filing deadline?

(4) under what circumstances should supplementation filed in 1980 be considered?

After resolving these issues, the Court will examine each category of disputed claims,[5] and review individually the claims of the "Big Four." [6]

As for the first issue, the Court holds that claims filed by those who "opted out" of the class in a timely fashion are invalid. It is, of course, settled law that class members cannot "sit on the sidelines" and await the results of trial or settlement negotiations before deciding whether to opt out. *See, e. g., Hawkins v. Holiday Inns, Inc.,* [1978–1] *Trade Reg.Rep.* (CCH) ¶ 61,-861 (W.D.Tenn.1977). It would seem to follow that those who have opted out should not be permitted to opt back in. Plaintiffs now contend,[7] however, that opt-outs should be permitted to withdraw their requests for exclusion from the class until such time as the Court issues an order excluding them

---

**4.** Defendants' challenges extend to nearly 40% of the shares of common stock claimed, more than 20% of the warrants claimed, and more than half of the debentures claimed. *See* Plaintiffs' Reply Brief, Dkt. 431, at 2.

**5.** For ease of reference, the Court and the parties agreed on a classification of challenged claims into eight categories. *See* Part III, *infra.*

**6.** Four claimants whose claims were challenged retained their own counsel in these proceed-

ings, to argue for the claims' validity. These claimants, First National Bank in Dallas, Kidder, Peabody & Co., Northwestern National Bank of Minneapolis, and Yale University, are referred to as the "Big Four." For a discussion of their claims, *see* pp. 366–367 *infra.*

**7.** Prior to September, 1980, when plaintiffs changed their position, plaintiffs and defendants were agreed that opt-outs should not participate in the settlement.

from the settlement. *See Sunrise Toyota, Ltd. v. Toyota Motor Co., Ltd.*, [1973] *Trade Reg.Rep.* (CCH) ¶ 74,398 (S.D.N.Y.1973). Assuming that to be true, however, the Court has already issued several orders that exclude opt-outs from the settlement in this case. The Order of February 1 directed that notice of the proposed settlement be sent only to "persons who were members of the class established by this Court's Order of August 17, 1973 and who did not heretofore execute and deliver timely requests for exclusion from the class." The Court's June 4 Order approving the settlement similarly excluded those who opted out of the class, in keeping with the parties' explicit agreement that opt-outs would not be eligible to participate in the settlement.

The case of *Beecher v. Able*, 575 F.2d 1010 (2d Cir. 1978), is apposite. In *Beecher*, the defendants sought reformation of a settlement agreement to allow for reversion of part of the settlement fund, in view of the fact that the number of claimants was lower than expected. The Second Circuit held that the district court was without power to modify an explicit non-reversion provision in the agreement, for the defendant "had expressly assumed the risk of mistake that the estimated number and amount of claims might be incorrect." *Id.* at 1015. Similarly, in the instant case, plaintiffs assumed the risk that the settlement offer might be sufficiently attractive that those who had sought exclusion from the class might wish to join it again. Plaintiffs' counsel foreclosed any possibility of the opt-outs' rejoining the class by entering into the settlement on the premise that opt-outs would be ineligible to file claims. The Court will not allow any claims filed by those who excluded themselves from the class and who were, in turn, excluded from the Settlement Agreement.

■ With regard to the filing deadline, plaintiffs contend that the seventy-five day period for the filing of claims did not begin until March 1, when class members were sent the notice informing them of a deadline. They contend, therefore, that the deadline for filing claims was May 15, rather than May 1, 1979. Defendants argue that the Court should deem the seventy-five day period to have begun, as scheduled, on February 15 when claim forms and Notices of Proposed Settlement were mailed. Nothing in the Settlement Agreement indicates which event should control for this purpose. In suggesting the seventy-five day period, the Court intended that claimants should have a reasonable period of time in which to retrieve and consult seven-year-old records, given that it would take some time for the notices to reach class members who had changed addresses. It is reasonable to assume that some claimants who received the February 15 notice and would have acted immediately to locate documents, had they known of the deadline, failed to act until they had received the notice sent on March 1. The filing period was effectively reduced to sixty days for such claimants. In view of the Court's special duty to protect the interests of absent class members in administering a settlement, *see, e. g., Greenfield v. Villager Industries, Inc.*, 483 F.2d 824, 832 (3d Cir. 1973); *Zients v. LaMorte*, 459 F.2d 628, 630 (2d Cir. 1972), the Court will not allow defendants to benefit, and make class members suffer, as the result of a mistake made jointly by the parties in implementing the terms of their agreement.[8] The Court holds that the seventy-five day period began when class members were sent full notice, including notice of a deadline. Therefore, the seventy-five day period began to run on March 1, and the filing deadline was May 15, 1979.[9]

---

**8.** Though the Proof of Claim Form and Notice of Proposed Settlement were drafted by plaintiffs' counsel, they were approved by defendants' counsel. In view of defendants' contention that the filing deadline was an essential element of the Settlement Agreement, defendants must concede that failure to notice its omission was an oversight on their part as well.

**9.** Admittedly, the notice sent to class members stated that the deadline was May 1 rather than May 15. Nevertheless, those claimants who filed between May 1 and May 15 should have the benefit of the period agreed to by the parties and the Court.

The Court finds defendants' arguments in favor of the May 1 deadline unpersuasive. Defendants contend that the Court has already ruled on this issue in its Order of May 1, 1979, and held that May 1 was the filing deadline. In denying plaintiffs' motion to extend the period for filing to July 2, the Court held only that the seventy-five day period for filing would not be extended; it did not rule on the issue whether the filing period began February 15 and terminated on May 1, as scheduled, or began March 1 and ended on May 15. Defendants also argue that plaintiffs waived their right to raise this issue by failing to raise it until the deadline for filing objections to the Settlement Agreement had passed. Plaintiffs' contention is not, however, an "objection" to the Settlement Agreement; the argument is that the seventy-five day period did not begin as planned, not that it was too short. Thus, there was no waiver.

■ The third broad issue raised by defendants' objections concerns whether claims that were timely filed supplied all the information required. In deciding how strictly the provisions of the proof of claim form should be construed, the Court is guided by the practical realities of class action litigation and the purpose of the claims procedure. As a court of equity, the Court recognizes that many class members are neither lawyers nor professional investors, and the Court will read the forms and notices with such an audience in mind. Moreover, the "Notice of Proposed Settlement" sent to owners of record with the claim form stated that claimants were required to submit their proofs of claim "in *substantially* the form enclosed herewith." Dkt. 310, Exhibit D, at 10 (emphasis added). Claimants, therefore, might reasonably have thought that strict compliance with the claim form's instructions was not essential. Certainly there was no suggestion in the form or notice that failure to comply with all of the form's instructions could or would result in disallowance of the claim.

Two common defects on which defendants based a number of challenges were claimants' failure to provide proof of capacity as trustee, administrator, or executor, and their failure to provide signatures of all joint tenants, co-trustees, or co-executors. Defendants contend that the proof of claim form clearly required claimants to provide proof of capacity, and those signatures, and that failure to do so by the filing deadline should result in a claim's disallowance.

■ With regard to submission of proof of capacity, the claim form provided, "[i]f you are filing a claim in a representative capacity, annex to this Proof of Claim copies of documents establishing evidence of your qualifications to act in such a capacity." Dkt. 310, Exhibit B, at 2. Trustees are fiduciaries, see *Restatement (Second) of Trusts* § 2, Comment b (1959), as are executors and administrators, see 31 *Am.Jur.2d* Executors and Administrators § 2 (1967). While the term "representative" has been interpreted to include fiduciaries for some purposes, see, e. g., 6 C. Wright & A. Miller, *Federal Practice & Procedure* § 1565 (discussing F.R.Civ.P. Rule 17(b)), it has been described as "an uncertain term" with "no technical significance in the law." *Gaffney v. Unit Crane & Shovel Corp.*, 117 F.Supp. 490, 491 (E.D.Pa.1953), quoting 77 *C.J.S.* Representative (1952). Moreover, the Proof of Claim form further confused the issue by specifically referring to "fiduciaries" in the instructions as to signature, thereby suggesting to claimants that that term had a meaning distinct from that of "representative." Finally, testimony in the record indicates that it was not customary practice for claimants to be required to submit documents such as trust instruments or letters testamentary at the initial stage of the claim procedure. See Deposition of Leonard Sheriff, Dkt. 418, at 87–92. In light of these considerations, the Court holds that the documentation requirement in the claim form was ambiguous, at least as to fiduciaries, and that claims will not be disallowed merely for failure to provide proof of fiduciary capacity by the filing deadline.

■ The claim form's instructions as to signature were also ambiguous. The instructions stated:

In case of joint ownership, all officers must sign. In the case of a corporation, a duly authorized officer must sign and show his title. In the case of a partnership, a general partner must sign and indicate that he is a general partner. All fiduciaries must indicate their capacity. *Id.* at 3. Defendants contend that the first sentence, pertaining to joint owners, applies to all co-trustees, co-administrators, and co-executors. This argument is well-founded as to joint tenants. However, it is unclear whether the requirement applied to fiduciaries. In its first section, the claim form distinguished between "Individual or Joint Ownership," on the one hand, and "Executor(s) or Administrator(s)," on the other, suggesting that at least some fiduciaries are not "joint owners." Moreover, the signature instructions stated merely that fiduciaries "must indicate their capacity," without indicating that all co-trustees, co-administrators, and co-executors must sign. The Court will not disallow a claim simply for failure to provide all of these signatures by the filing deadline.

■ Another challenge was based on defendants' contention that claimants who failed to include in their claims all their Wilson securities should not be permitted, after the filing deadline, to expand their claims to include additional Wilson securities of which they were record owners. This argument makes clear defendants' position that, even where a claimant's ownership and authority are not at issue and a claim was filed in a timely fashion, any failure to comply with the claims procedure, set out in the claim form, necessarily invalidates the claim. Nothing in the Settlement Agreement bars claimants who have filed timely claims, and whose record ownership is established, from amending their claims to reflect their full holdings. Furthermore, equity dictates that it be allowed, and the Court will allow it.

■ Finally, a number of challenges were grounded on defendants' view that where claimants were notified prior to the filing deadline that additional documentation was required, the claims must be disallowed unless the necessary supplementation was submitted by the filing deadline. Many claimants who received such notification prior to the deadline were, however, given insufficient time in which to respond. In some cases, Delaware Trust sent notices on April 27, 1979 notifying claimants that supplementation was required by May 1, 1979. It would be unreasonable to disallow those claims for failure to respond by the deadline. In setting the period for filing of supplementary documentation in 1980, this Court held that a period of one month was reasonable under the circumstances. *See* Dkt. 345, at 34. Similarly, as to claimants who received notice prior to the filing deadline, the Court holds that, in order to comport with due process, they should have been given a month for submission of supplementation. The only claimants, then, whose claims will be disallowed for failure to submit timely supplementation in 1979 are those who were sent notices by April 1, and who thus had a month before the May 1 deadline [10] in which to supplement. [11] However, the Court will consider supplementation submitted after the deadline, in determining the validity of a claim, if there was "excusable neglect" on the part of the claimant. [12] *See Supermarkets General*

---

**10.** Though the Court has held, *supra,* that the filing deadline was May 15, the deadline stated in the notices sent to claimants was May 1. Under the circumstances, it would be unfair to treat claimants who were sent notices on April 15 as having been given a month in which to respond.

**11.** This argument applies as well to the notices of objection sent by plaintiffs' counsel on May 14, which arbitrarily set May 25 as the supplementation deadline. Since none of the notices that set a May 25, 1979 deadline allowed claim-

ants a month for filing, no claims will be disallowed for failure to supplement in 1979. However, such claimants had to submit any necessary supplementation during the period set by the Court in 1980 in order for their claims to be allowed.

**12.** Rule 6(b) of the Federal Rules of Civil Procedure provides,

When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown

*Corp. v. Grinnell Corp.*, 59 F.R.D. 512 (S.D. N.Y.1973), *aff'd*, 490 F.2d 1183 (2d Cir. 1974). As a general rule, determinations as to excusable neglect must be made on a case-by-case basis.

### III. Categories of Challenged Claims

■ With these general issues settled, the Court turns now to the eight categories of disputed claims. Some of these, such as Category One, can be readily disposed of in light of the foregoing discussion. Category One is comprised of claims filed by those who had previously requested exclusion from the class. The Court has held that these claimants are precluded from participating in the settlement, *see* pp. 356–357, *supra*; all claims in Category One are therefore disallowed.

Category Two consists of the claims filed by May 1, 1979 which allegedly failed to provide all the information required by the Proof of Claim form, but for which no notification of the alleged defects was sent to the claimants prior to the filing deadline. Defendants contend that certain instructions in the claims procedure were so plain that failure to comply with them should invalidate a claim, even though the claimant was not notified of the defect and given a chance to remedy it. In view of the ambiguity of the claim form's instructions, *see* pp. 358–359, *supra*, no claim in this category will be disallowed merely because, at the filing stage, it failed to provide proof of the claimant's capacity as trustee, executor or administrator, or to provide the signatures of all co-trustees or co-executors. Moreover, the Court sees no persuasive argument for not permitting post-deadline expansion of the claims of those who listed, in their original claims, only some of the Wilson securities of which they were record owners, *see* p. 359, *supra*. All claimants in Category Two were, however, obliged to supply any additional documentation re-

quested once they were notified of these defects. The Court therefore disallows the claims of the following claimants, who were notified in 1980 of objections concerning either proof of capacity or provision of required signatures, and who failed to provide any supplementation within the period set by the Court: Agnes B. Beamer, Trustee; George W. Call, Custodian; Estate of Ethel J. Cohen; Janet K. Faso, Executrix; Donald T. Rosenfeld, Trustee; and Dartmouth National Bank and Doris M. Schreiver, Trustees. The Court will allow the claim of Virginia Hauck in part, to the extent of twenty shares; because she failed to confirm defendants' records and expand her claim when she was given the opportunity to do so in 1980, her claim is disallowed as to the ten additional shares now claimed.

Defendants challenge several claims in Category Two, those filed by Agnes B. Beamer, Continental Illinois National Bank and Trust Co. of Chicago ("Continental Illinois"), First National Bank of Chicago ("First National"), and Edd Lee, for failure to provide sufficient proof of ownership.[13] The Proof of Claim form instructed claimants who were not record owners of Wilson securities to "annex ... copies of documents establishing evidence of your ownership ... such as copies of broker's confirmations, monthly account statements, or delivery receipts" to their claims. Dkt. 310, Exhibit B, at 2. The issue of adequate proof of ownership is moot as to Agnes Beamer's claim, which has been disallowed on other grounds. Both Continental Illinois and First National filed claims for securities held of record by their respective nominees. Under the circumstances, the Court will not disallow these claims for failure to provide documentation of ownership by the filing deadline, for the instructions gave no indication what documentation banks needed to supply to prove ownership of securities registered in their nominees' names.

---

may at any time in its discretion... (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect;....

**13.** Defendants also challenge the claims filed by Northwestern National Bank of Minneapolis, one of the Big Four on this ground. The claims of the Big Four will be discussed in detail below. *See* pp. 366–367, *infra*.

Both Continental Illinois and First National supplemented their claims by the May, 1980 deadline, and their claims will be allowed. On the other hand, the Court will not allow the claim of Edd Lee. As Mr. Lee was not the record owner of the securities he claimed, the claim form's instruction as to proof of ownership clearly applied to him. Though he subsequently perfected his claim in 1980, the balance of equities tips in defendants' favor in his case.

Finally, defendants challenge a claim filed by Century First National Bank in its capacity as "Personal Representative of the Estate of Ray W. Merriman." The claim as filed included no proof of the bank's authority to act in a representative capacity. While the claim form's instructions may have been ambiguous as to "executors" and "administrators," they explicitly stated, "[i]f you are filing in a representative capacity, annex to this Proof of Claim copies of documents establishing evidence of your qualification to act in such a capacity." Dkt. 310, Exhibit B, at 2. The bank ignored this instruction in filing its claim. Moreover, though the bank subsequently supplemented its claim, it offered no excuse for having failed to provide the necessary documentation in 1979. There is thus no basis for finding "excusable neglect," and the claim will not be allowed. The Court will allow all the remaining claims in Category Two.

Category Three is comprised of claims filed by May 1, 1979, where the claimants were notified of alleged defects prior to May 1 but did not perfect their claims until after May 1. The Court has held that due process required that claimants be given a month in which to provide any supplementation requested. See p. 359, supra. Therefore, no claim is invalid simply for failure to respond by May 1 to a request for supplementation mailed after April 1. While the Court would disallow any claim where the claimants was given at least one

month prior to May 1 in which to respond and failed to provide the requested documentation in that time, none of the claims in Category Three fits that description. Supplementation submitted by certain Category Three claimants who were notified after April 1 was received after the May 15 filing deadline.[14] In most of these cases, the claims were perfected within a month of the request for supplementation, and in every case, the claims were perfected prior to the May 16, 1980 deadline for supplementation. The Court will therefore allow all the claims in Category Three.

Category Four consists of claims that were timely filed and supplemented, which defendants contend were inadequately supplemented. Because of the variety of defects alleged by defendants in connection with claims in this category, it will be necessary to consider them on a case-by-case basis. However, in deciding whether to allow a claim, the Court will not consider supplementation submitted in 1980 if the claim was supplemented in 1979 in response to a specific notice of objections. The claim of Byron Cain is a case in point. Mr. Cain was notified in April, 1979 that the proof of ownership that he filed with the claim form was inadequate. Though he supplemented his claim in May, 1979, he failed to remedy this defect. Though adequate proof was supplied in May, 1980, there is no reason to give the claimant "two bites at the apple." Given that the 1979 notice of objection was clear and specific as to the defect, the Cain claim will not be allowed.

Among the other Category Four claims, the following claimants' claims are invalid, for the reasons stated: Robert E. Casper, for failure to document proof of ownership; Joseph D. Dailey, for failure to show ownership as of July 26, 1972; George Washington Life Insurance Company, for failure to disclose the name in which debentures claimed were held of record; Lann Founda-

14. These claimants were: Amsterdam-Rotterdam Bank (supplementation submitted 6/27/79); Harry Cagin (8/30/79); Vanda L. Davidson (5/30/79); Alfred K. Erstad (5/16/79); Anthony S. Falsone (5/30/79); Arthur M. Harmuth (6/1/79); Vale G. Marvin (5/18/79); Francis V. Mushial (7/17/79); Samuel I. Sherwood (5/16/79); and Marino Turtur (6/1/79).

tion, Inc., for failure to prove ownership as of July 26, 1972; Henry and Renee Last, for failure to show ownership as of July 26, 1972; Gwendolyn Park, for failure to provide proof of ownership within the period allowed for supplementation; Vincent Sabatino, for failure to document proof of ownership as of July 26, 1972; Sylvia Siegler, for failure to provide confirmation of record ownership of warrants; and Richard S. Temko, for failure to prove ownership as of July 26, 1972.

The challenges to the claims of Chemical Bank, filing as Trustee for Sanderson & Porter, Inc., and Sydney Singer raise one of the most difficult issues confronting the Court in connection with the contested claims. Many claims filed by claimants whose securities were held in "street name" were challenged for failure to provide adequate evidence of ownership as of July 26, 1972. Some claimants, such as Chemical Bank, submitted records showing only that the securities claimed had been tendered in August, 1972. Others, such as Sydney Singer, submitted documents showing purchases of Wilson securities prior to July, 1972 and tender of Wilson securities after July, 1972, and alleged that the securities bought and tendered were the same securities. The Court will not allow Chemical Bank's claim, or Mr. Singer's claim in full,[15] for it cannot presume from proof of tender after July 26, 1972, and proof of purchase prior to July 26, that the claimant was the owner as of July 26.[16] As it is the general practice of brokers to provide clients for whom they hold securities in "street. name" with a periodic accounting of their security positions,[17] these claimants could have proved ownership as of July 26, 1972 simply by submitting an account statement for the relevant period.

The Court will disallow in part a number of the other claims in Category Four. The claim of Louis M. Cohen is allowed only as to 250 warrants and ten debentures; it is disallowed as to the additional five debentures claimed, for failure to provide adequate evidence of ownership as of July 26, 1972. The claim of Darrell D. Davidson is allowed only as to the 200 shares held of record; no proof of ownership was submitted as to the additional 100 shares claimed. The claim of Noralee Gold is allowed as to twenty-five debentures, but disallowed as to the warrants claimed, which she concedes were sold prior to July 26, 1972. The claims of Dorothy N. Offutt and Herbert J. Ravel are allowed as to the debentures claimed, but disallowed as to any warrants, for claimants' failure to confirm ownership at defendants' repeated request. The claim of Vera Will is allowed as to twenty-five warrants, but disallowed as to the shares and the one debenture claimed, for failure to provide proof of ownership.

Two of the challenged claims will be allowed in their entirety. Defendants challenged the claim of N. Carl Schwartz on the ground that he claimed ownership as of July 28, 1972, rather than July 26, 1972. However, the claimant's mistake can be traced to the form prepared by the Settlement Committee, which notified Mr. Schwartz, "[o]ur records show that as of July 28 [sic], 1972, you were the owner of 250 warrants... Please verify whether our information is correct." Defendants are therefore estopped from challenging any claim on that ground.

Finally, the claim submitted by Carl and Thelma Keck is valid to the full extent of 300 warrants. The claimants submitted a

---

**15.** Defendants concede that Mr. Singer's claim is valid as to five debentures and 125 warrants, and the claim is allowed to that extent.

**16.** The Court recognizes that, because Pepsi-Co's tender offer was not contingent on the tender of a minimum number of shares overall, *see* Dkt. 240, Exhibit 64, there probably was no incentive for an investor to purchase shares on the open market after the tender offer was made, and then tender. However, a claimant

must prove that he owned the stock on the date in question; evidence establishing that he probably owned it is insufficient.

**17.** Rule 409(a) of the New York Stock Exchange Constitution and Rules requires that members of the Exchange send customers quarterly statements of account for active accounts. This rule was in force in 1972.

letter from their broker to establish their ownership as of July 26, 1972 of the fifty warrants that they owned in "street name." Defendants challenged this proof as inadequate. The Court holds that a broker's letter attesting to a claimant's holdings in July, 1972, like a brokerage statement for that month, is adequate proof of ownership.

Category Five consists of claims that defendants challenged only on the ground that they were filed late. It follows from the Court's ruling as to the filing deadline, see p. 357, supra, that the following claimants' claims were timely filed: Edna A. Berquist; John J. Clancy; Earl D. Dix (both claims); Frank J. Kemple; Robert T. Lee;[18] Richard E. Leist; Robert G. Mahler; David W. Peterson; Louis Raff; James S. Reece; Fletcher D. Slater; and Arthur K. Veeder. Because they were timely filed and were not challenged on other grounds, these claims are allowed.

The Court has reviewed the remaining claims in this category to determine whether any claims filed after May 15 should be allowed because the tardiness was the result of excusable neglect. A number of these claimants offered no explanation of their failure to comply with the deadline; these claims are disallowed.[19] As for the claims that offered excuses, none satisfied the stringent standard of excusable neglect.[20] The Court is most sympathetic toward those claimants who allege that they never received notice of the settlement, or received notice after the filing deadline as a result of a delay in the mails. However, it must be recognized that in any settlement, there will be some class members who are difficult to locate and who may not receive timely notice of the settlement; the function of the filing deadline is to put a time limit on the claims procedure. In view of defendants' reversionary interest in the set-

tlement fund and the hard-fought negotiations over the filing deadline, it would be unfair to defendants to eviscerate this term of the Settlement Agreement. Cf. Beecher v. Able, 575 F.2d 1010, 1014–16 (2d Cir. 1978) (rejecting defendants' motion to modify explicit provision of agreement when number of claimants was smaller than expected). The Court will not allow late claims on the ground that claimants failed to receive timely notice. All Category Five claims filed after May 15 are disallowed.

Category Six consists of claims which were filed after May 1 and which defendants contend failed in some respect to provide necessary documentation. Unlike in the case of the Lee claim, see p. 361, supra, none of the alleged defects is such that the Court will disallow any of these claims for failure to comply with unambiguous instructions in the claim form. The following claimants' claims were timely filed and perfected, and are allowed at least in part: Chemical Bank, Trustee for John Livingston Trust; William D. Dobbins; Albert C. Edgar, Custodian (both claims); Paul and Joy Grossman; Christopher Hecht; Dr. Edward A. Partenope; Marilyn S. Stone; and the Estate of Casmir R. Zill. Chemical Bank perfected its entire claim by supplying a copy of the relevant trust instrument, and copies of the Trust Department's statements for the account. The claim of William D. Dobbins is allowed only as to the one debenture claimed; even after the Notice of Challenge was sent, Mr. Dobbins failed to claim any warrants. Similarly, both Edgar claims are allowed as to one debenture. Paul and Joy Grossman perfected their claim by submitting documents showing ownership as of July 26, 1972. Mr. Hecht submitted proof sufficient to show that he had authority to act as custodian on behalf of his deceased father, who was the

---

**18.** Contrary to assertions by defendants that Mr. Lee's claim was postmarked May 21, 1979, see Defendants' Opening Brief at 66, it was mailed May 2, 1979.

**19.** The claimants who offered no excuse were: Barbara T. Brown; Sharon L. Goodwin; and Notax & Co.

**20.** The claimants who submitted explanations were: Alan A. Abadie; S. Edgar Batson, Jr.; Richard E. Chamberlain; Mark D. Dyehouse; Carol B. Epstein; Robert J. Hoepfl; Andrew J. LaFever; William Matechak; Lois Matthews; William T. Snowden; Bedonna Stein; and Hazel R. Swab.

owner of record. The letter from his broker that Dr. Partenope filed along with the original Proof of Claim form is sufficient proof of ownership as of July, 1972; the Court allows his claim. The claim of Marilyn Stone is allowed, though only as to the 100 warrants owned of record, as the evidence submitted to prove ownership of additional warrants as of July 26, 1972 was inadequate. Finally, the National Bank of South Dakota, filing as co-executor of the Estate of Casmir R. Zill, supplied the letters testamentary and additional signature necessary to perfect the claim within the time allowed.

The Court disallows the following claimants' claims, which were timely filed, for the reasons stated: Emben & Co., for failure to provide any proof of authority to act for the record owner, despite a specific request to do so; Goldie Fogel, for failure to provide any proof of ownership; Simpson and Sandra Gold, for failure to provide all necessary signatures; Marshall Goldblatt, for failure to give proof of authority to act for the record owner; Kenneth M. Gorshkow, for failure to establish ownership as of July 26, 1972; Joe and Betty Healey, for failure to submit adequate proof of ownership as of July 26, 1972; Neil S. Lawson, Executor, for failure to sign the claim form; Lenore A. Marshall, for failure to provide proof of authority to act on behalf of record owner; Miche Priaulx, for failure to provide any proof of ownership; Allan Shapiro, for failure to specify the number of securities held and to confirm defendants' records; Fannette P. Stone, for failure to provide adequate proof of ownership as of July 26, 1972.

Any claim filed after May 15 is disallowed unless the claimant established that the untimely filing was the result of excusable neglect. The claims of those claimants who filed after May 15 and gave no explanation of their tardiness, even when subsequently given the opportunity to do so, are disallowed.[21] None of the four claimants who offered explanations was tardy in filing because of excusable neglect.[22] Delay in receiving notice is not a sufficient ground for extending the filing deadline, see p. 363, supra. All of the Category Six claims filed after May 15 are disallowed.

The claims in Category Seven were timely filed, and claimants were notified prior to May 15, 1979 that supplementation was required, but no supplementation was submitted in 1979. In deciding whether to allow these claims, the Court will not take into account supplementation that was submitted in 1980 if the claimant was notified of objections by April 1, 1979 and yet failed to supplement by the filing deadline. Such claims are valid only if defendants' objections were baseless and no supplementation was in fact necessary, or if there was excusable neglect in the failure to make timely supplementation and the defects were remedied by the May, 1980 deadline. After reviewing each of the thirty Category Seven claims where the claimant was notified of objections by April 1, 1979, the Court finds that none of them was adequately documented at the time of filing, and that defendants' objections were well-founded. Moreover, none of the claimants in this group who subsequently perfected their claims offered an adequate explanation for failing to supplement by the filing deadline. Some of these claimants' claims needed no supplementation as to certain parts, and are allowed to that extent.[23] The claims of the

---

21. These claimants are: Sylvester and Dorothy Doran; Don C. Hennigan; John W. Miller; Secnab & Co.; and Village Green Baptist Church.

22. These claimants are: Hilda S. Black; Morris Cohen and Lillian Bloom, Trustees; Dorothy K. Colbert; and Isabelle Swartz.

23. These claimants are: Vernon E. Bau, whose claim is valid as to two debentures; Margaret L. Bogie, five debentures; Thomas Contos, 100 warrants; Teddy Lee Cook, five debentures; Donald M. Desfor, four debentures; C. Frederick Frick, one debenture and twenty-five warrants; Donald W. Harder, seventy-five shares of common; Virginia Hauck, Custodian, two claims valid, each to the extent of five shares; Dwight Howard, 200 warrants; Howard Enterprises Profit Sharing Plan, 100 shares; Earl M. O. James, one debenture; Robert A. Kritzler, seventy-five warrants; Elizabeth S. Loud, one

remaining Category Seven claimants who were sent notices of objections by April 1 are disallowed.[24]

As for claimants in Category Seven who were notified of objections for the first time after April 1, 1979, the Court will allow their claims provided they were perfected by May 16, 1980. Four claimants supplied the requisite documentation so as to validate their claims *in toto*: H. Wayne Barnes; Frances H. Janz; Otto A. Reiners; and Jack Rowe. Some claimants failed to perfect their claims as to certain securities but had valid claims as to others.[25] Several claimants, Herbert J. Batt, Esther Glickstein, Howard Enterprises, Inc., Letha I. Lamb, and Anna D. Pullen, confirmed their record ownership of securities they had failed to list originally. The Court allows their expanded claims, which include their entire holdings of record. Three claimants, Fannie F. Ginsburg, Elizabeth A. Malinowski, and Leonard M. Temko, failed to confirm defendants' records as to their ownership of Wilson securities in addition to those claimed; their claims will be allowed only to the extent of their initial claims.[26] The remaining claimants' claims are disallowed in their entirety,[27] for the reasons stated in the Notices of Challenge, *see* Dkt. 355B.

Category Eight consists of claims filed by claimants who initially listed more securities than they owned of record, and, in response to notices of objection, revised their claims to conform to defendants' records. The Court allows these claims only to the extent of claimants' record holdings.

Defendants have challenged four claims that do not come within the eight categories. Selman M. Doak filed a timely claim for 150 warrants and no debentures. In response, Delaware Trust, the agent of the Court in administration of the settlement, notified him that he was the record owner of 100 warrants and one debenture, and requested confirmation of its records. Mr. Doak revised his claim accordingly. Delaware Trust subsequently discovered that it was in error, and that Mr. Doak was the record owner of four debentures. Defendants now seek to limit Mr. Doak's debenture claim to one debenture, despite the bank's error. The Court sees no persuasive legal argument for not allowing Mr. Doak's claim to the full extent of his holdings of record, and allows it in light of the equities.

Arthur Lezatte filed a claim which defendants challenge on the ground that he opted out of the class in 1973. In 1973, Mr. Lezatte was employed by Wilson, and he is still a Wilson employee. He seeks to avoid being excluded from the settlement, along with the Category One claimants, on the grounds that he was advised by his superior at Wilson that "it would be in [his] best interest to execute the exclusion," and he did not understand the legal consequences of opting out. Mr. Lezatte does not allege that he was coerced into opting out, nor

---

debenture, twenty shares; William S. McElroy, ten debentures; John A. Miklos, 1000 warrants; and Sunset Hill Cemetary Association, 10,000 debentures.

24. These claimants, who filed the remainder of the thirty claims in this group, are: Jess Blatstein, Angelina Brucato, Sanford Claster, Michael D. Eischeid, Robert P. Hagen, Jesse Jabour, Donald Kerbis (both claims), Claire A. Larson, Leomister Industrial Supply Co., Samuel E. Mittelman, Sid Stoltenberg, and Alphonse C. Weber.

25. These claimants with partially valid claims are: Martin Bolodian, 100 warrants; Frank C. Carlin, Jr., as sole owner, 500 warrants; Dennis C. Constas, 100 warrants; Alexander Fuller, twenty-five warrants; Arthur L. Gendler, three debentures; Lotte Jakob, 2000 warrants; Harold K. Otto, 100 warrants; Pan American Life

Insurance Co., 140 debentures, 750 warrants; Warren Rabb, 400 warrants; and Carl Volkwein, Jr., two debentures.

26. Mr. Temko's claim was also challenged with regard to the number of debentures claimed. The claim is valid only as to four debentures; no adequate proof was submitted that the claimant owned more.

27. These claimants with invalid claims are: Estate of Randolph Caldwell; Waymon D. Carpenter; Lear Flanagan, Jr.; Alvin Graff; Leonard Grajewski; Albert Gross; Lucille B. Longstaff; Estate of Wanda Martini; Randall B. Mott; Musaad Al-Saleh Real Estate, Ltd.; Eleanor Prince; William Prince; Gerald Schmitz; Clarence Schwartz; Security Trust of Rochester (fifteen claims); and Richard J. Whalen.

does he explain why he can now change his position as to the settlement, while still in Wilson's employ. The Court finds that this claim does not make out a case of coercion, and disallows it, like the Category One claims.

The remaining claims raise no difficult issues. Philip Polansky's claim is valid only as to the 100 warrants he held of record, for he failed to provide adequate proof of ownership as of July 26, 1972 of any other Wilson securities. The claim of Michael Webber is allowed, for defendants are estopped from challenging any claims for which a Notice of Challenge was not sent in April, 1980. Finally, the Court disallows all claims that both plaintiffs' and defendants' representatives on the Settlement Committee challenged.

IV. *Challenges to Claims of the Big Four*

In ruling on the disputed claims, it remains only to determine the validity of the claims filed by the Big Four. These claims receive separate treatment, despite the fact that they involve many of the same issues as claims in the eight categories, because of their relative size, and the fact that each of these claimants retained counsel in connection with defendants' challenges to the claims. In the case of the claims involving the First National Bank in Dallas (FNB), the nominees of FNB filed timely claims with respect to securities registered in their name and held by FNB in a fiduciary capacity for various private accounts. The claims were filed in the nominees' names, in keeping with FNB's confidentiality policy. *See* Dkt. 377, at 41. In 1979, Delaware Trust notified one of the nominees, which had filed a claim for 3013 debentures, that it was the record owner of only 2503 debentures, and the nominee revised its claim. In response to a Notice of Challenge sent in 1980, First National Bank submitted additional documentation intended to remedy other alleged defects.

Defendants challenge the validity of the claims filed by FNB's nominees on a number of grounds. They assert: that the nominees were not eligible claimants; that the requisite proof of representative capacity was not provided; that the supplementation was untimely; and that the claims remain unperfected, for lack of necessary signatures and proof of authority to act in a representative capacity.

The first three objections are easily disposed of. Defendants waived the first objection by not raising it in the Notices of Claim Challenge sent to FNB. The second objection fails in view of the ambiguity of the claim form's instructions. *See* pp. 358–359, *supra*. Finally, FNB's supplementary documentation was filed within the prescribed period in 1980.

The difficult issue is whether any of the claims are still unperfected. Defendants contend that proof of authority to act in a representative capacity is still lacking in connection with some claims, while signatures of co-trustees are missing in others. The Court disallows claims filed on behalf of the following accounts, for failure to establish capacity to act on behalf of the beneficial owner: Account 323–07251–0 (Nominee: Ace & Co.); Account 323–06918–0 (Ace & Co.); Account 216–07708–0 (EBP & Co.); Accounts 216–03031–0 and 216–03032 (EBP & Co.); Account 374–08394 (Ace & Co.); Account 151–01141–0 (Roy & Co.); and Account 323–06735–0 (Ace & Co.). Defendants waived their objection as to co-trustees' signatures by failing to raise it in the Notice of Challenge sent to FNB.

Defendants also contend, and FNB concedes, that FNB incorrectly stated the allocation of debenture record ownership among its nominees, claiming 510 too many debentures for FID, one of its nominees, and 510 too few for GPR, another of its nominees. However, while FID was notified in 1979 that it had claimed more debentures than it owned of record, defendants failed to notify GPR that it owned more than it had claimed. Defendants are, therefore, estopped from arguing that GPR's 1980 revision of its claim should not be permitted. The FID and GPR debenture claims will be allowed to the extent of the record holdings. With the exception of those claims disallowed above, the Court allows all claims filed by FNB's nominees.

Like FNB, Northwestern National Bank of Minneapolis ("NNB") filed a number of timely claims for Wilson securities registered in the names of its nominees and held by NNB in various capacities for private accounts. The supporting documentation submitted with the claim forms consisted of a cover letter identifying the nominee that held the securities of record, and a "statement of account" from NNB as proof of ownership. In response to defendants' Notice of Challenge in April, 1980, NNB submitted additional documentation to establish ownership of the securities as of July 26, 1972, and to establish claimants' authority to act in a representative capacity.

Defendants now contend that NNB's claims should be deemed invalid for failure to supply adequate documentation pertaining to ownership and capacity by the filing deadline. Given the vagueness of the form's instructions, NNB's supporting documentation was sufficient to satisfy the requirements at the filing stage, see pp. 360–361, supra. Moreover, NNB provided the additional documentation requested in April, 1980 by the supplementation deadline. Defendants also contend that the supplemented claims are still unperfected because all the necessary co-trustees' signatures have not been obtained. However, as in the case of FNB, because neither the claim form nor the Notice of Challenge stated unambiguously that all co-trustees' signatures were needed, NNB's claims will not be disallowed on that basis. Though NNB filed some claims without authorization from the beneficial owners, in all the instances cited by defendants, authority to file the claims was retroactively conferred. The Court allows the claims filed by NNB as timely filed and perfected.

Defendants challenge the claim of Kidder, Peabody & Co. ("Kidder") on several grounds. The first, that Kidder's claim was untimely, has no force; the claim was filed May 4, 1979. Second, defendants question whether Kidder claimed more warrants than it owned of record. The Court finds, on the basis of the evidence submitted, that Kidder was the record owner of 33,185 warrants as of July 26, 1972. Third, defendants contend that Kidder could not, as record owner, submit claims on behalf of beneficial owners. The claim form did not state that beneficial owners rather than record owners had to file the claim.[28] Moreover, this Court included record owners within the class.[29] Kidder was entitled to file the claims, and its claims are allowed.

Defendants challenged the claim of Yale University solely on the basis of timeliness. Yale filed its claim form on May 1, 1979, and the supporting documentation on May 9. Because the filing period ran through May 15, Yale's claim was timely filed and will be allowed.

## V. Interest on The Settlement Fund

The remaining issue in connection with the settlement concerns the interest accruing to the Settlement Fund. Paragraph 2 of the Settlement Agreement provides as follows:

If the Court shall not have signed a Final Judgment by April 14, 1979, . . . interest will accrue [on the $4.5 million] at the legal rate of interest in the State of Delaware, which is 6% simple interest per annum. Thereafter, when a Judge of the United States District Court for the District of Delaware signs a Final Judgment, defendants will deposit the sum of $4,500,000, together with all accrued interest, into a bank . . . . Said $4,500,000, together with all interest accrued thereon, whether before or after deposit, shall hereinafter be referred to as the "Settlement Fund".

The parties are agreed that the applicable rate of interest for the Fund is 6% in the

---

**28.** The Notice of Proposed Settlement mailed to record owners with the Proof of Claim form instructed record owners who were not beneficial owners to forward copies of the notice to the beneficial owners; nothing was said, however, as to who should file the claim.

**29.** The Court's Order of January 14, 1974 states that, "[t]he Class consists of security owners, record and/or beneficial, as of the close of business on July 26, 1972." See Dkt. 86.

period from April 15, 1979 until entry of a final judgment, and that all interest earned thereafter on the Fund accrues to the Fund. The dispute arises over whether, for the limited purposes of Paragraph 2, a final judgment should be deemed to have been entered in this case. Plaintiffs contend that this Court's June 4 Order, captioned "Order, Final Judgment and Direction for Entry of Judgment Approving Settlement," triggered the higher interest rate on the Fund. Defendants, on the other hand, argue that the June 4 Order should not be deemed a final judgment for any purpose.

■ Defendants base their position on the Third Circuit's disposition of defendants' appeal of the June 4 Order. The Third Circuit held that "[t]he district court improvidently entered a F.R.C.P. 54(b) determination as to the approval of the class settlement agreement," and dismissed the appeal for want of appellate jurisdiction. *Valente v. PepsiCo, Inc.*, 614 F.2d 772 (3d Cir. 1980). The Court of Appeals is without jurisdiction to reach the merits of a "non-final" order, improperly certified by a district court under Rule 54(b), because such an order is not within the scope of 28 U.S.C. § 1291. *See Allis-Chalmers Corp. v. Philadelphia Electric Co.*, 521 F.2d 360, 362–63 (3d Cir. 1975).

■ The Third Circuit's Order establishes that this Court's June 4 Order was not, for purposes of appeal, a final judgment. That does not, however, settle the issue as to the applicable interest rate. Whether the Court's entry of the June 4 Order constitutes a "signing" of a "Final Judgment," within the terms of Paragraph 2, is a matter of contract interpretation. It is axiomatic that a single paragraph of a contract should be interpreted in the context of the entire document, *see, e. g., Hudson v. D & V Mason Contractors, Inc.*, 252 A.2d 166, 169 (Del.Super.Ct.1969); *Restatement (Second) of Contracts* § 228 (Tent.Draft 1973), and should, where possible, be interpreted to give effect to the main purpose of

the parties. *Id.* The Settlement Agreement, taken as a whole, shows that the parties conceived of approval of the settlement, formalized by the entry of final judgment, as the first step in the Court's administration of the settlement. *See, e. g.*, Settlement Agreement ¶ 12. Defendants clearly anticipated that the higher rate of interest would apply to the Fund for the period of the Court's administration of the settlement. *See* Letter from James F. Burnett to Herbert E. Milstein (May 16, 1979). The parties jointly submitted to the Court the proposed Order that the Court entered on June 4, and clearly viewed it as a final judgment. None of the briefs filed by the parties on appeal of the June 4 Order raised the Rule 54 "finality" issue in connection with the Court's approval of the Settlement Agreement.[30] These considerations suggest that under Paragraph 2, the Court's entry of an order approving the settlement, designated as a "Final Judgment," terminated the 6% limit on interest accruing to the Fund.

The Court views this as a matter of contract interpretation rather than reformation. Professor Corbin cogently distinguished between the two:

One who files a bill for reformation of a written contract usually asserts that the written words do not express to others the meaning that he was trying to express; .... One who asks enforcement of a written contract without reformation does not seek replacement of any of the words written therein. Instead, he asserts that they properly express the meaning that he had and ... asks that these words be interpreted by listening to evidence of the surrounding circumstances ; . . . .

3 *A. Corbin, Contracts* § 540 (2d ed. 1960). The draftsmen of the *Restatement* recognized that, "[i]n borderline cases a court may, by viewing the issue as one of interpretation, avoid the necessity of a decree reforming the writing." *Restatement*

---

**30.** Plaintiffs' counsel argued only that the Court had not entered a final judgment as to the *contested* claims, and that an appeal as to

those claims was therefore premature. *See* Plaintiffs' Motion to Dismiss Appeal, at 3.

*(Second) of Contracts*, § 297, Comment b (Tent.Draft No. 10, 1975). Thus, if A agrees to sell B the American patent rights to an invention for which A holds the American, French, and British patent rights, and their written agreement uses the term "all patent rights," meaning all American rights, a court will interpret the contract as covering only the American rights, without decreeing reformation. *See id.*, Illustration 7. Thus, in the instant case, reformation is not required; the Court can reach a result by interpretation.[31] That distinguishes this case from the cases principally relied upon by defendants.[32]

The Court holds that under Paragraph 2 of the Settlement Agreement, entry of the June 4 Order terminated the 6% ceiling on interest accruing to the Fund. From June 4, 1979, all interest earned on the Settlement Fund accrued to the Fund.

*Conclusion*

For the reasons stated in its Opinion of June 4, 1979, the Court approves the Settlement as fair, reasonable, and equitable. The claims allowed herein, and all claims not challenged by defendants, shall be paid from the Settlement Fund, in accordance with the terms of the Settlement Agreement.

**31.** Since there is no need for reformation of the Settlement Agreement, the Court need not decide whether the record provides the "clear and convincing evidence" necessary for it to reform a contract. *See In re McCall*, 398 A.2d 1210 (Del.Ch.1978). It is well established, however, "that courts of equity have jurisdiction to relieve parties against the consequences of mutual mistake of fact and to grant reformation in case of such a mistake." *Thomas v. TWA, Inc.*, 457 F.2d 1053, 1056 (3d Cir. 1972), quoting 45 *Am.Jur*. Reformation of Instruments § 55 (1938). Moreover, an incorrect view of the law concerning, for example, the "finality" of the June 4 Order, is deemed a mistake of fact. *See* Restatement (Second) of Contracts § 293, Comment b (Tent.Draft No. 10, 1975).

**32.** The settlement agreement in *Haas v. Pittsburgh National Bank*, 495 F.Supp. 815 (W.D.Pa. 1980), specified that interest would accrue on the settlement fund at the passbook savings rate, until the date of the award of counsel fees. When interest rates rose and there was a delay in the award of counsel fees, class counsel moved that the agreement be reformed to provide for a higher interest rate on the Fund during the period prior to the award of counsel fees. The Court denied the motion on the grounds that the parties might have foreseen the change in interest rates, and the Court could not find that they had not in fact foreseen it. *Id.* at 817.

In *Beecher v. Able*, 575 F.2d 1010 (2d Cir. 1978), defendants sought to have the settlement agreement reformed to provide for reversion of part of the fund in view of the fact that the number of claimants turned out to be smaller than anticipated. The motion was denied because the defendants had assumed the risk that the claimants might be fewer than expected, in accepting an explicit non-reversion provision in the agreement. *Id.* at 1015.

Unlike in *Haas* and *Beecher*, there is no indication in the instant case that either party foresaw the possibility that the Court's approval of the settlement would be deemed not a final order, or that either party intended to assume any risk in that connection. The Agreement failed to provide for an appellate ruling of "non-finality." Paragraph 13 states: "If the Court does not approve this Agreement... or if the Court approves this Agreement and an appeal is taken from such approval, and on appeal or certiorari the judgment approving this Agreement is reversed or vacated, this Agreement shall thereupon become null and void and of no further effect...." Dkt. 310, Exhibit A, at 9.