Wheeler G. FOSHEE, Jr., et al.,
Plaintiffs-Appellees,

v.

LLOYDS, NEW YORK, an unincorporated association, et al., Defendants.

LLOYDS, NEW YORK, an unincorporated association and United States of America, Defendants and Plaintiffs in Interpleader-Appellees,

v.

USS AGRI–CHEMICALS, Division of United States Steel Corporation, Defendants in Interpleader-Appellants,

v.

CUSTOM FARM SERVICES OF ALABAMA, INC., Etc., et al., Defendants in Interpleader-Appellees.

No. 79–3727.

United States Court of Appeals,
Fifth Circuit.

May 1, 1981.

---

Hill, Hill, Carter, Franco, Cole & Black, W. Inge Hill, II, Montgomery, Ala., for defendants in interpleader-appellant.

M. Carr Ferguson, Gilbert E. Andrews, U.S. Department of Justice, Tax Division, Washington, D.C., Barry E. Teague, U.S. Atty., Montgomery, Ala., Robert T. Duffy, John A. Dudeck, Jr., Washington, D.C., for United States.

Charles B. Paterson, Montgomery, Ala., for Custom Farm Services of Alabama, Inc.

Marvin Albritton, Andalusia, Ala., for The Commercial Bank of Andalusia.

W. Sidney Fuller, Tipler & Fuller, Andalusia, Ala., and Hobbs, Copeland, Franco &

Screws, Albert Copeland, Montgomery, Ala., for Foshee and Foshee.

Before FAY and VANCE, Circuit Judges, and ALLGOOD *, District Judge.

VANCE, Circuit Judge:

This is another of the several cases that that have brought the Foshee brothers before this court.[1] This latest controversy involves attorneys' fees and priorities of creditors.

The background to this case is stated in our opinion in *Foshee v. Lloyds, New York*, 619 F.2d 1104 (5th Cir. 1980). A fire destroyed the Foshees' warehouse in which their peanut crop was stored. The warehouse building and its contents were insured by Lloyds, New York. The insurance claim involving the building was the subject of a suit which was settled for $160,000 prior to trial. The case involving the contents was strongly resisted and tried to conclusion. It resulted in a recovery against the insurer and another in the amount of $632,096.85 which was affirmed by this court.

In the present case the Foshees charged Lloyds and four other defendants with willful refusal to settle the insurance claim. Their tort claim was tried before a state court jury which found for the Foshees and awarded them $125,000. Three of the Foshees' creditors immediately sought to reach the proceeds of the judgment by garnishment. The insurer and its codefendants then interpleaded the amount of the judgment into the Circuit Court of Covington County, Alabama. Out of such proceeds the state court awarded the Foshees' attorneys $95,000 in accordance with the terms of their fee agreement. An application for reconsideration was filed by the creditors. At that point the United States Internal Revenue Service, which was a claimant by virtue of a tax lien, removed the case to district court. The district judge reconsidered the award of attorneys' fees but denied the creditors' application. The remaining proceeds of the judgment ($30,000) were allocated by the district judge first, to the United States, and then to two of the Foshees' creditors, Custom Farm Services of Alabama, Inc. (Custom Farm) and Commercial Bank (the bank), on an equal basis. The entitlement of the third and the largest creditor, USS Agri-Chemicals (Agri-Chemicals), was found to come after the IRS and the other two creditors.

Agri-Chemicals appealed and advances three contentions: (1) that the award of $95,000 in attorneys' fees out of a total of $125,000 was erroneous, (2) that the district court's assignment of a top priority to IRS was error, and (3) that the court also erred in giving priority to the other two creditors. We affirm the district court with respect to the first two contentions and modify its judgment with respect to the third.

(1)

The essential facts concerning the attorneys' fees award are not disputed. The $125,000 recovery was produced by a novel tort claim which was virtually unknown in Alabama. The litigation extended over several years. The Foshees were represented by two of the top law firms in the state. The original agreement called for a 50% contingent fee. After the litigation had been pending for several years, and a few months before trial, the Foshees approached the attorneys and asked that the agreement be recast. They proposed that the attorneys receive 100% of the first $50,000, 50% of the next $100,000 and 20% of any amount above $150,000. A third attorney was to receive 10% of any amount above $50,000. It was the Foshees' thinking that because of the nature of the claim,

---

* District Judge of the Northern District of Alabama, sitting by designation.

1. *See Foshee v. Lloyds, New York*, 619 F.2d 1104 (5th Cir. 1980); *United States v. Foshee*, 569 F.2d 401, *modified on rehearing*, 578 F.2d 629 (5th Cir. 1978), *conviction on remand aff'd*, 606 F.2d 111 (5th Cir. 1979), *cert. denied*, 444 U.S. 1082, 100 S.Ct. 1036, 62 L.Ed.2d 766 (1980).

they would probably achieve a recovery of upwards of $1,000,000 or no recovery at all. In their view, the proposed revision would at least give them a chance to pay off their creditors in full. Although the arrangement was admittedly unusual it was agreed to by their attorneys solely at the instance of the Foshees. Throughout the consideration of this matter at various stages there has not been the slightest suggestion of any impropriety on the part of the attorneys. The contrary has been conceded by all opposing counsel and is recognized by the court.

Because the amount of the verdict and judgment fell into an unanticipated range the revised fee arrangement results in a division of 76% of the recovery to the Foshees' attorneys and 24% to their creditors. The history leading to this unusual result was thoroughly considered by the state court and was reviewed in detail by the district court. According considerable deference to the state court, which had observed the conduct of the litigation, the district court held that it did not satisfactorily appear that its decision to enforce the contingent fee contract according to its terms was erroneous.

In *Cappel v. Adams,* 434 F.2d 1278 (5th Cir. 1970) we held that a district court may supervise a contingent fee contract to insure the reasonableness of the fee award. The district court has properly reviewed the reasonableness of the award in this case and its holding should not be disturbed unless it has abused its discretion. A majority of this panel holds that the ruling of the district court did not constitute an abuse of discretion.[2]

(2)

A federal tax lien was properly filed on April 15, 1977, over a year prior to the verdict and judgment in favor of the Foshees against Lloyds and others in the tort case. Appellant does not contest that by operation of federal statute, 26 U.S.C. §§ 6321–6323, such a lien continues until the amount due is satisfied and is valid against a judgment creditor whose interest arises after its filing. Agri-Chemicals points out, however, that it had obtained an earlier judgment against the Foshees on June 29, 1976 and had effected service of its first garnishment on August 4, 1976, prior to the federal tax lien.

We look to federal law to determine the priority of a federal tax lien as against competing interests. *United States v. Security Trust and Savings Bank,* 340 U.S. 47, 49, 71 S.Ct. 111, 112, 95 L.Ed. 53 (1950). The rule which the Supreme Court has recognized is "first in time, first in right." *United States v. New Britain,* 347 U.S. 81, 87, 74 S.Ct. 367, 371, 98 L.Ed. 520 (1954). *See also United States v. Vermont,* 377 U.S. 351, 354, 84 S.Ct. 1267, 1269, 12 L.Ed.2d 370 (1964). Alabama law applicable in the present situation is no different: "Garnishment 'proceedings cannot displace prior valid and bona fide existing rights and claims against the debt or property involved.'" *Sloss v. Glaze,* 231 Ala. 234, 239, 164 So. 51, 54 (1935).

The first of the two garnishments filed by Agri-Chemicals predated the federal lien. If valid it comes first. To determine its validity we look to state law. The rule appears to be well established in Alabama that only monied demands subject to suit in debt and assumpsit are garnishable. *Deloney v. United States Fidelity & Guaranty*

2. In the case involving the fire insurance on the Foshees' warehouse building the original fee agreement (50% over the mortgage) was altered to increase the attorneys' fees to $54,-868.24. In the case involving destruction of the peanuts the original fee agreement (50% over the mortgage to the Bank of Brewton) also was not applied. On a common fund theory the district court awarded the attorneys $79,779.83 rather than 50% of $119,686.16. This court affirmed. 619 F.2d 1104. The author of this opinion is of the view that the entire history of the litigation should be considered. The Foshees were represented by the same lead attorneys in all three matters. On complaint by their creditors, who have standing to contest the issue, he would hold that revision of the original fee agreement in this case was unreasonable and would affirm only an award equal to 50% of the total recovery in accordance with the original agreement.

Co., 272 Ala. 569, 133 So.2d 203 (1961); *Booker T. Washington Burial Ins. Co. v. Roberts*, 228 Ala. 206, 153 So. 409 (1934). The debt must be due absolutely and without contingency. *Sloss v. Glaze; Mayberry & Co. v. Morris*, 62 Ala. 113 (1878). The Foshees' tort claim therefore could not be garnished prior to October 5, 1978, the date of judgment. *Cunningham & Son v. Baker, Peterson & Co.*, 104 Ala. 160, 16 So. 68 (1893); Ala.Code § 6–6–393 (1975). Agri-Chemicals' 1976 garnishment was without effect and the tax lien was correctly determined by the district court to have first priority.

### (3)

There remains the question of priority of the claims of the three judgment creditors: Agri-Chemicals, the bank and Custom Farm.

■ The Foshees' October 5, 1978 tort judgment was against five defendants. On that very same day all three of the creditors filed garnishments. The parties agree, however, that in Alabama a garnishment lien attaches on the date of service and priorities are determined as of that date. *Deloney v. United States Fidelity & Guaranty Co.; Piper Ice Cream Co. v. J.L. Walker & Co.*, 245 Ala. 281, 16 So.2d 798 (1944); *Standard Sanitary Manufacturing Co. v. Benson Hardware Co.*, 228 Ala. 594, 154 So. 560 (1934). Agri-Chemicals was the first creditor to serve four of the five tort defendants; the bank and Custom Farm served the fifth defendant first[3] by which time they had served the other four as well.

Determination of the priorities of the three creditors under these facts is, of course, governed by Alabama law. All parties agree there is no applicable case law in that state and very little from any other jurisdiction. It is our responsibility to anticipate what the Supreme Court of Alabama most likely would hold if it were called upon to resolve the question before us.

The district court concluded that the garnishor must serve all tortfeasors in order to perfect a lien. It cited only the case of *Ladd v. Baker*, 26 N.H. 76 (1852) and that for the proposition that ordinarily it is insufficient to garnish only one of several parties who are jointly liable. In brief appellees cite the additional case of *Hirth v. Pfeifle*, 42 Mich. 31, 3 N.W. 239 (1879).

*Hirth* involved a suit on a joint note. One of the signers of the note alleged as a defense that he previously had been garnished in a suit against the owner of the note. The Michigan court held that the garnishment provided no defense. Only one of the joint signers was garnished and a garnishment process could not reach a debt due from two joint debtors by service on one.

In *Ladd* the court stated the established rule to be that one of two joint debtors cannot be charged as a trustee unless the other debtor is joined with him in the process. The court concluded that the same rule would be applicable in the case of a joint and several contract reasoning that the trustee (or in our procedures the garnishee) might be called on to pay the same debt or a portion of it a second time. In the case before it, however, the court found that no danger of double payment existed and did not require both debtors to be joined.[4]

---

**3.** Their service of the fifth defendant was on the same day. All parties agree that as a result, these two creditors stand on equal footing.

**4.** The court in *Ladd* stated:

Ordinarily, the debtor who is not made a party to the action has a right, and may pay and discharge the contract at its maturity, and gain a right to a contribution against the party sued. In the case of *Jewett v. Bacon*, [6 Mass.Rep. 60], it was held that he might make the payment and discharge the contract during the pendency of the suit, without, and even against, the will of the trustee. If such be the law, and the trustee in such a case was holden to be chargeable, it is clear that he might be greatly prejudiced by reason of his liability to pay the debt a second time, under the trustee process. It is this risk of prejudice and injury to the trustee that has led to the adoption of the rule already stated. While the statute is intended to furnish to creditors the means of satisfying their debts by the attachment of the funds of debtors in the hands of trustees, it is not designed to

We have no criticism of the *Ladd* holding. The rationale of that case does not, however, lead to the conclusion that Agri-Chemicals' lien was not perfected until it had served all five defendants. In this case, as in *Ladd*, it is not necessary to require service of all the debtors to guarantee against the possibility of double payment.

■ A brief examination of the nature of tort liability under Alabama law makes this clear. Defendants who jointly participate in a tortious wrong are responsible jointly and severally. *Hall v. Seaboard Air Line R. Co.*, 211 Ala. 602, 100 So. 890 (1924). "All participants in wrongful acts, directly or indirectly, whether as principals or agents, or both, are jointly and severally liable in damages for wrong done, where injury results." *Roan v. Smith*, 272 Ala. 538, 542, 133 So.2d 224, 227 (1961). Suit against the defendants may be joint or several at the election of the plaintiff. *Lang v. Gunn*, 23 Ala.App. 574, 129 So. 318 (1930). As the trial court recognized there ordinarily is no contribution among joint tortfeasors in Alabama. *Sherman Concrete Pipe Machinery, Inc. v. Gadsden Concrete & Metal Pipe Co.*, 335 So.2d 125 (Ala.1976).[5] The debtors in the present case could not, therefore, have been subject to double liability.

The Foshees were free to pick and choose among defendants, to sue them jointly or separately, to include all or less than all. *City of Birmingham v. Hawkins*, 196 Ala. 127, 72 So. 25 (1916). Nothing in Alabama law suggests their judgment creditors are

in a materially different position. Indeed the language of the cases suggests a contrary conclusion. As the Supreme Court of Alabama stated more than a century ago:

A garnishment may issue to any number of persons, whether they hold property, or are indebted, jointly or severally, to the debtor. It operates from its service to create a lien on the property in the possession of, or the debt due from, any or all of the garnishees. Each garnishee answers for himself, and it is on his answer the court pronounces judgment, or directs an issue to be formed, thus separating him from the other garnishees.

*Curry v. Woodward*, 50 Ala. 258, 260 (1874).

■ It is thus the view of this court that Agri-Chemicals established priority against the four judgment debtors upon whom it first perfected service. Conversely, by first serving the fifth judgment debtor the other two creditors established priority against that debtor.

At the time the interpleader was filed, the various creditors had established priorities against different debtors. Joining together the five debtors in the interpleader proceeding effected a payment of the total outstanding judgment as to all. Although the question is hardly free from doubt, we think under such circumstances it is likely that the Alabama courts would hold that the claims of all three creditors are equal in priority.

We therefore affirm the award of $95,000 in attorneys' fees and affirm the establishment of the IRS first priority with respect to the balance. We modify the district

---

give the trustee process the effect of working injustice and prejudice to the trustee. The law does not intend changing his rights and duties to his detriment, but only, without injury to him, to apply the funds of the principal debtor found in his hands to the fair discharge of the creditor's claim. This statute is properly to be so construed and administrated as to accomplish its just purposes, and none other.

26 N.H. at 83. The court made quite clear, however, that

if those reasons do not exist in this case, then a different rule may be applied, and a different result may be arrived at, and the trustee,

having funds in his hands belonging to the principal debtor, may be charged therefor. For when the reasons no longer exist upon which a rule of law rests, the rule itself ceases to exist.

*Id.* at 84.

**5.** Indemnification, unlike contribution, is permitted. "A master is entitled to recover from his servant damages which the master has been required to pay by reason of the negligence of his servant." *American Southern Insurance Co. v. Dime Taxi Service, Inc.*, 275 Ala. 51, 53, 151 So.2d 783, 785 (1963). This rule has no application to the facts of this case, however.

court's judgment so as to hold that the three remaining creditors have equal priority to any sum then remaining which sum shall be apportioned among them pro rata in proportion to their judgments with accrued interest.

AFFIRMED in part, MODIFIED and REMANDED in part.