CURTISS–WRIGHT CORPORATION,
Plaintiff-Appellant,

v.

Robert HELFAND, et al.,
Plaintiffs-Appellees.

No. 81–2263.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 22, 1982.

Decided March 26, 1982.

Allan Horwich, Schiff, Hardin & Waite, Chicago, Ill., for plaintiff-appellant.

Lawrence J. Fox, Philadelphia, Pa., for plaintiffs-appellees.

Before BAUER, Circuit Judge, SWYGERT, Senior Circuit Judge, and POSNER, Circuit Judge.

POSNER, Circuit Judge.

The question in this case is the power of a district court to deny one of the members of the class in a class action settlement his full proportionate share of the settlement, without giving him a trial-type hearing.

Between 1970 and 1975 the management of Cenco Incorporated conducted a massive fraud. Primarily it involved inflating the value of Cenco's inventories. This brought about an artificial increase in the price of Cenco stock, followed by a collapse after the fraud was unmasked. The collapse hurt holders of Cenco stock who had bought during the period of the fraud. Among these was Curtiss-Wright Corporation. It had begun purchasing Cenco stock heavily in 1974 and within a few months had amassed five percent of that stock. It wanted to buy even more and discussed with Cenco's management a deal under which it would make a large loan to Cenco and in connection therewith obtain options to purchase additional stock. As part of the negotiations over the loan, Curtiss-Wright's auditors, Coopers & Lybrand, conducted a one-week business review of Cenco's operations which produced significant negative information about Cenco. Curtiss-Wright learned that Cenco had poor or non-existent accounting controls, a low rate of inventory turnover and $10 million in obsolete inventory, grossly inaccurate quarterly earnings reports, and a peculiar habit of writing down inventory at warehouses that Cenco's own independent auditors observed and writing it up at warehouses the auditors did not observe. The loan was not made but Curtiss-Wright continued buying Cenco stock. By June 1975, when the fraud was unmasked, it owned 16 percent of that stock, far more than any other stockholder.

In July a class action was brought in federal court against Cenco and others, alleging violations of federal securities law and state common law. The class was composed of purchasers of Cenco stock during the period of the fraud, including Curtiss-Wright. Curtiss-Wright's participation in the class action created a certain awkwardness, because in the wake of the unmasking it had used its position as Cenco's dominant stockholder to appoint three members of the Cenco board of directors, including Cenco's chief executive officer. To alleviate the conflict of interest created by its being in effect on both sides of the lawsuit, Curtiss-Wright agreed with Cenco in 1977 not to sue Cenco other than as a passive member of the class.

Later that year the district judge certified a shareholder class that included Curtiss-Wright. Shortly afterward the class representatives learned about the business review that Coopers & Lybrand had conducted for Curtiss-Wright, that it had yielded significant negative information, and that Curtiss-Wright had nevertheless continued buying Cenco stock. They objected to Curtiss-Wright's being in the class. When the district judge approved the settlement agreement that the class representatives had worked out with Cenco, he reserved the question whether and to what extent Curtiss-Wright would be allowed to participate in the settlement. Similar reservations were included in his orders approving subsequent settlements with other defendants. When all of the settlements had been worked out, the judge, after receiving briefs from the interested parties

but without granting an evidentiary hearing, entered an order that Curtiss-Wright could share in the settlements only to the extent of its purchases prior to the business review. Curtiss-Wright appeals from that order pursuant to Fed.R.Civ.P. 54(b).

Curtiss-Wright argues, first, that the judge had no power to modify the settlement agreements that had been worked out between the class representatives and the defendants without the consent of all interested parties. There is a surprising dearth of authority on what one might have expected to be a recurrent issue in class actions, the vast majority of which are settled rather than litigated. About the closest case to the present one that we have been able to find is *Beecher v. Able*, 575 F.2d 1010 (2d Cir. 1978). A judgment had been entered pursuant to a class action settlement that provided for the allocation of a $5 million fund among various classes of securities holders. Claims totaling about $5.5 million were expected to be filed but in fact the total was little more than $1 million. The case was reopened and over the defendant's objection the judge reallocated the fund among the class members so that each one got considerably more than he would have gotten under the original allocation, though less than his total losses. The Second Circuit held that the district court had acted within its power—that in fact "it was incumbent upon the district court to exercise its broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members more equitably." *Id.* at 1016. This general language cuts against Curtiss-Wright's argument, but an even more significant feature of *Beecher* may be the fact that in entering its judgment approving the class action settlement the district court had reserved " 'jurisdiction over the effectuation of settlement, including all matters and controversies relating to the processing and fixation [*sic*] of claims . . . .' " *Id.* So far as appears, the defendant had not challenged this provision when entered and had thereby waived objection to the modification that the district court ordered.

■ In light of this express reservation, the Second Circuit did not have to decide the abstract question whether a district judge may modify a class action settlement over a party's objection. The quoted provision authorizing modification was part of the settlement itself. No more need we decide that abstract question here, or decide whether an objecting class member stands on the same footing as an objecting defendant, or attempt to reconcile the broad language of *Beecher* with the admonition in *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1172 (5th Cir. 1978), and many other cases, "that while the court in reviewing a [class action] settlement may make suggestions for modifications of the proposed decree, it may not unilaterally change the decree." For this is not a case where a district judge tries to rip open a settlement that has become final. The objection of the class representatives was made before the settlement (which required the approval of the district judge, Fed.R. Civ.P. 23(e)) became final, and by reserving decision on the objection the judge served notice on Curtiss-Wright that if it continued as a member of the class any settlement that was approved could later be modified to carve down its entitlement. At this point Curtiss-Wright could have opted out of the class action, just as any participant in a settlement negotiation can decide before the settlement becomes final to withdraw and take his chances with litigation. But Curtiss-Wright chose not to do so. No doubt it was influenced by the fact that if it brought its own lawsuit against Cenco it would be in apparent breach of its covenant not to sue Cenco other than as a passive plaintiff in the class action. But it will not be heard to complain about the consequences of a voluntary decision to reduce its litigating options.

■ Curtiss-Wright has a fallback position. It argues that, even assuming the judge had the power to deny it its full share of the settlements, he could not exercise that power without a trial on the issue whether, if Curtiss-Wright had sued Cenco

directly, Cenco would have had a good defense based on the information that Curtiss-Wright obtained from Coopers & Lybrand's business review. For if Cenco had no such defense, so the argument goes, the judge could not rationally differentiate Curtiss-Wright from the other class members.

If the premise is accepted—that the district judge, in order to be able to carve down Curtiss-Wright's share of the class action settlement, had to adjudicate Cenco's defense—there would be an argument that something like a trial was necessary to resolve what is after all a trial-type liability issue. Perhaps not a compelling argument in light of cases such as *Airline Stewards & Stewardesses Assoc., Inc. v. American Airlines*, 573 F.2d 960, 963 (7th Cir. 1978), which emphasize that the purpose of a settlement is to avoid a trial; but this we would not have to decide; for the premise leads to an even more drastic conclusion. Even without a trial it is fairly plain that Cenco did *not* have a good defense against Curtiss-Wright. It is pretty much out of the question that Curtiss-Wright obtained actual knowledge of Cenco's fraud from the business review; if it had, it would not have continued buying Cenco stock in large quantity. At worst Curtiss-Wright was careless in continuing to buy in the face of suspicious circumstances, especially the conjunction of poor financial controls with a pattern of inventory write-ups and write-downs suggestive of an effort to deceive Cenco's independent auditors. But its negligence would not be a defense to fraud, an intentional tort (there is also a tort of negligent misrepresentation, but Cenco's misrepresentations were intentional). See Prosser, Handbook of the Law of Torts 426, 706, 716 (4th ed. 1971). So we think it pretty clear, without having to decide the question, that Curtiss-Wright's negligence would not cut down its rights against Cenco in an independent lawsuit. And while it might affect its rights against Cenco's independent auditors, who were also named as defendants in the class action and who also contributed to the settlement funds, this would not justify the district court in denying Curtiss-Wright's entire claim for damages arising from purchases of stock after the business review.

But we think the district court's action had another and sounder basis, one that had nothing to do with the legal rights of Curtiss-Wright against Cenco or any other defendant and that did not require a trial to establish. The essential question raised by the class representatives' objection to Curtiss-Wright's getting any damages on its purchases of stock after the business review was not what rights Curtiss-Wright had against the defendants but what rights it had against the other plaintiffs. Whether the objection was sustained or denied could not affect the defendants' liability by a penny, since the settlement funds were not large enough to make all the members of the class whole. We do not have precise figures but apparently they were only large enough to give the class members an average of 20 cents for every dollar of their losses. Hence if Curtiss-Wright's claim for losses sustained on stock bought after Coopers & Lybrand's business review was denied, the other class members would recover a slightly higher percentage of their losses (but still far short of 100 percent), while Curtiss-Wright would recover less than 20 percent (roughly two-thirds less) of its losses. The only issue the judge had to decide was whether this result was more equitable than the uniform allocation contended for by Curtiss-Wright.

Not only is the class action procedure equitable in origin, *Hansberry v. Lee*, 311 U.S. 32, 41, 61 S.Ct. 115, 118, 85 L.Ed. 22 (1940), but the allocation of an inadequate fund among competing complainants is a traditional equitable function, see Chafee, Some Problems of Equity 169–70, 223 (1950) —using "equity" to denote not a particular type of remedy, procedure, or jurisdiction but a mode of judgment based on broad ethical principles rather than narrow rules. Cf. *Zients v. La Morte*, 459 F.2d 628, 630 (2d Cir. 1972). To make an equitable allocation in this case the judge did not have to resolve trial-type issues of liability and therefore did not have to conduct a trial. He had only to weigh the relative deservedness

of Curtiss-Wright and the other class members, and he could do this on the basis of the undisputed facts before him. Those facts were that Curtiss-Wright had continued to buy Cenco stock in massive quantities, making it the biggest member of the class, despite having known things that no other class member knew and that would have made a reasonable investor suspicious of the soundness of his investment. Curtiss-Wright plunged boldly ahead and while this probably did not affect its rights against the defendants it certainly affected its rights, as a matter of equity, against the other class members.

When Curtiss-Wright decided to remain in the class action despite the district judge's reservation of the class representatives' objections, it should have known that the judge would try to allocate an insufficient settlement sum in a way that reflected the relative equities among the class members. Curtiss-Wright should have withdrawn from the class action if it did not want to run the considerable risk that its equities would be found inferior to those of the other class members. Having decided not to opt out, perhaps on the basis of a covenant not to sue which in itself placed it on a different and from an equitable standpoint inferior basis to the other class members, it cannot complain about a decision on the equities that was reasonable in the circumstances.

Admittedly, the result—a plaintiff coerced to settle for less than he was willing to settle for—is odd from the standpoint of conventional litigation. There the rule is unanimity; no one is forced to settle. But unanimity is a workable decision rule only when the number of parties to a transaction is small. Class action procedures are designed to handle disputes where there are many parties. There is no way such disputes could be settled on the basis of unanimity. When a district judge approves a class action settlement pursuant to Rule 23(e), he almost always overrides the wishes of some class members for a bigger share of the pie. But his decision, though it coerces

settlement by those plaintiffs, will be upheld unless he is found to have abused his discretion. See, e.g., *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977); *In re Equity Funding Corp. of America Securities Litigation*, 603 F.2d 1353, 1365 (9th Cir. 1979). Due process is not affronted, because a plaintiff is not required to submit his claim in the class action but can withdraw and sue separately. If he does not do so, he subjects himself to the authority of the district judge who may give him much less in the settlement than he wanted. Cf. *Valente v. Pepsico, Inc.*, 89 F.R.D. 352, 357 (D.Del.1981).

That is essentially all that happened here. The fact that the share Curtiss-Wright sought was cut down after rather than as in the usual case before the other settlement terms had been approved has no legal significance, since Curtiss-Wright knew that the settlement was not final as to it. The district judge acted reasonably, on a record that was adequate to the equitable judgment that he had to make, and the judgment appealed from is therefore

AFFIRMED.