FEDERAL TRADE
COMMISSION, Plaintiff,

v.

AMERICAN LEGAL DISTRIBUTORS,
INC., et al., Defendants.

Civ. A. No. 1:88–CV–519–MHS.

United States District Court,
N.D. Georgia,
Atlanta Division.

July 9, 1990.

**1536**

Katharine B. Alphin, F.T.C., Atlanta Office, Atlanta, Ga., John F. Neiley, F.T.C., Denver, Colo., for plaintiff F.T.C.

Howard Robert Ronick, Office of Howard Robert Ronick, Atlanta, Ga., for defendants American Legal Distributors, Inc., and Patrick Pasley.

Michael R. Funderburk, Office of Michael R. Funderburk, Lilburn, Ga., Janis Posner–Raynak, Harris & Palumbo, Phoenix, Ariz., Joel S. Sansone, Sansone & Associates, Pittsburgh, Pa., for proposed intervenors.

## ORDER

SHOOB, District Judge.

This matter is again before the Court after the United States Court of Appeals for the Eleventh Circuit affirmed in part and reversed in part the Court's order denying a motion to intervene filed by several individual consumers. *Federal Trade Commission v. American Legal Distributors, Inc.*, 890 F.2d 363 (1989). The Eleventh Circuit held that intervention should have been allowed for the limited purpose of addressing "issues relating to the future sale and distribution" of assets frozen by the Court. *Id.* at 365. The intervenors claim that "they are entitled to recover proportionately more than the victims represented by the FTC in the distribution of defendants' assets." *Id.* For the reasons stated below, the Court disagrees and will grant plaintiff's motion to clear title and for distribution of assets on a *pro rata* basis.

Plaintiff the Federal Trade Commission (the "FTC") filed suit in March 1988 against defendants on behalf of the victims of a fraudulent legal services program operated by defendants. The Court entered a temporary restraining order on March 14, 1988 and a preliminary injunction on March 23, 1988. Shortly thereafter, default judgment was entered against defendants. *See* Order dated April 29, 1988. The Court subsequently authorized payment of funds into the registry of the Court and sale or disposition of property subject to the asset freeze. *See* Orders dated May 26, 1988 and August 18, 1988.

Meanwhile, several individual consumers ("intervenors") filed suit in the United States District Court in Arizona based on some of the same claims that were the basis for the suit in this Court. Intervenors represent a small percentage of the nearly four hundred consumers defrauded by defendants. Intervenors obtained a default judgment in the Arizona action and some months later filed a motion to intervene in this action. Because the motion to intervene was untimely, and because counsel for intervenors made repeated improper *ex parte* communications with the Court attempting to delay the action brought by the FTC, the Court denied intervention. *See* Order dated November 10, 1988. Now that intervention has occurred, this matter should be concluded promptly.

At this juncture, the only actions that have not occurred are sale and distribution of defendants' assets. Because the Court already authorized the FTC to dispose of assets subject to the Court's asset freeze, there should be no interference by intervenors or any other third parties with disposition of those assets. To the extent that problems have occurred, the Court orders intervenors to cooperate with plaintiff in clearing title to any property subject to the Court's asset freeze and in subsequent sale of such property. For their part, intervenors have expressed concern about whether the FTC has proceeded against all of defendants' assets. The Court cannot address such issues in the abstract, but suggests that counsel for intervenors consult with counsel for the FTC to determine whether any such assets exist. If the par-

ties disagree, the Court will consider an appropriate motion.

With regard to distribution of assets paid into the registry of the Court, the Court notes that the parties agree that the Arizona court's judgment and this Court's judgment have equal priority.[1] As a result, were assets available to satisfy both judgments in full, each side would recover the amount of its judgment. Unfortunately, the available assets total far less than the sum of the two judgments. Counsel therefore agree that a *pro rata* distribution should occur,[2] but disagree about what constitutes an appropriate *pro rata* distribution.

 The FTC argues that each victim of the fraudulent scheme should recover in direct proportion to the actual loss he or she suffered. Under this approach, each victim would recover the percentage of his or her actual loss that is equal to the percentage of available assets divided by the total amount of the actual loss reflected in the two judgments. If any funds remained after all actual losses were recovered, those assets would be used to satisfy the treble damage award obtained by intervenors under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The FTC argues that this approach best discharges the Court's equitable powers and is consistent with the decisions of numerous other courts distributing funds in situations where assets are insufficient to cover losses. *See, e.g., Ruddle v. Moore,* 411 F.2d 718 (D.C.Cir.1969) (affirming district court's distribution of swindled funds on *pro rata* basis according to respective losses of victims).

Intervenors argue that the Full Faith and Credit Clause of the United States Constitution, U.S. Const. art. IV, § 1, mandates that they receive fifty percent of the available assets. They reason that, because the judgments are of equal priority, each judgment must be satisfied by an equal share of the available assets. Intervenors further insist that their treble damage award should not be treated differently than actual losses. Intervenors attempt to distinguish the cases cited by plaintiff because they do not involve judgments of equal priority and maintain that the FTC's reliance on the Court's equitable powers overlooks the requirements of the Full Faith and Credit Clause. The Court finds it revealing, however, that intervenors do not cite a single case that adopts their approach and never indicate how the Full Faith and Credit Clause vindicates their position.

The flaw in intervenors' argument is readily apparent. To the extent that the policies behind the Full Faith and Credit Clause apply in this case,[3] they merely require that the Court treat judgments of equal priority as equally valid and ensure that one judgment is not satisfied at the expense of the other. Intervenors ignore these principles. Although the Arizona court judgment represents approximately one seventh of the sum of the two judgments, intervenors maintain that they are entitled to one half of the available assets. If the Court were to allow such a distribution, its judgment would be subordinate to the Arizona judgment: approximately thirty percent of the Arizona judgment would be satisfied, while only five percent of this Court's judgment would be satisfied. The Court will not allow such a disproportionate distribution.[4] Contrary to intervenors'

---

1. Plaintiff's Memorandum in Support of Motion for Order to Clear Title and Direct Distribution of Assets on a Pro Rata Basis at 3; Brief in Support of Intervenors' Response to Plaintiff's Motion to Clear Title and Distribute Assets at 4.

2. Plaintiff's Memorandum at 3; Intervenor's Brief at 4. *Pro rata* distribution means "according to a certain rate, percentage or proportion." Black's Law Dictionary 1098 (rev. 5th ed. 1979).

3. The Full Faith and Credit Clause is not binding on federal courts. *University of Tennessee v.*

*Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220, 3226, 92 L.Ed.2d 635 (1986). In addition, it primarily addresses the preclusive value of foreign court judgments.

4. As stated earlier, were sufficient assets available, each judgment would be one hundred percent satisfied. It follows in this case that, because about ten percent of the necessary assets are available, each judgment should be ten percent satisfied.

belief, it is the amount of each judgment, not the number of judgments, which dictates what satisfaction each judgment must receive. *See Foshee v. Lloyds, New York,* 643 F.2d 1162 (5th Cir.1981) (distribution of funds between creditors with claims of equal priority determined in proportion to amount of judgments).[5]

 The Court must also determine whether it should allow recovery of the RICO treble damage component of intervenors' judgment on equal footing with the actual damage awards of the two judgments. This decision invokes the Court's equitable power, because it sits as a court of equity in this case, *Federal Trade Commission v. U.S. Oil & Gas Corporation,* 748 F.2d 1431, 1432 (11th Cir.1984), and because "the allocation of an inadequate fund among competing complainants is a traditional equitable function." *Curtiss-Wright Corporation v. Helfand,* 687 F.2d 171, 174 (7th Cir.1982) (citation omitted). Intervenors argue that it is not appropriate for the Court to consider the basis for a judgment awarded by another court. The Court does not find, however, that it is required to exercise its equitable discretion in such a blind fashion.

Intervenors cannot contend that the Court would be barred from exercising its equitable discretion to prefer actual damages over treble damages if both were contained in a judgment issued by this Court (and there were not sufficient funds to satisfy the entire amount). Again, while the Arizona judgment cannot be subordinated to this Court's judgment, it is not entitled to more preferred treatment. This Court would not allow recovery of treble or punitive damages as part of one of its judgments where limited funds existed, at least not until all actual damages were recovered. *Accord Securities and Exchange Commission v. Certain Unknown Purchasers of Common Stock etc.,* 817 F.2d 1018 (2nd Cir.1987), *cert. denied, Olaques v. Securities and Exchange Commission,* 484 U.S. 1060, 108 S.Ct. 1013, 98 L.Ed.2d 979 (1988); *Summers v. Federal*

*Deposit Insurance Corporation,* 592 F.Supp. 1240 (W.D.Okla.1984). The Court likewise will not distribute the limited assets available in this case to allow such recovery.

For the foregoing reasons, the Court GRANTS plaintiff's motion to clear title and for distribution of assets on a *pro rata* basis. The Court ORDERS intervenors that they must cooperate with plaintiff's efforts to identify and dispose of all assets subject to this Court's asset freeze. The Court DIRECTS the parties that the available assets will be distributed in proportion to the amount of each victim's actual loss. The Court further DIRECTS the parties that all actual damages must be recovered before treble damage awards or other punitive damage awards may be satisfied. Finally, the Court ORDERS the parties to submit a joint status report concerning disposition of assets along with a projected timetable for distribution of assets by September 1, 1990.

IT IS SO ORDERED.

---

**5.** In *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all cases decided by the Fifth Circuit before September 30, 1981.