**In re HOLOCAUST VICTIM ASSETS LITIGATION.**

**Abraham Friedman, Eliazar Bloshteyn, and Sofiya Bloshteyn, Plaintiffs– Appellants,**

v.

**Jacob Friedman, et al., Plaintiffs– Appellees,**

Union Bank of Switzerland, Swiss Bank Corporation, Credit Suisse, and Swiss Bankers Association, Defendants–Appellees.

Nos. 00–9595(CON), 00–9597(CON).

United States Court of Appeals, Second Circuit.

July 26, 2001.

Bernard V. Kleinman, Esq., White Plains, NY, for Abraham Friedman; Eliazar Bloshteyn and Sofiya Bloshteyn, Brooklyn, NY, pro se.

Burt Neuborne, Esq., New York, NY, for appellees.

Present WALKER, Chief Judge,
LEVAL and CABRANES, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of said district court be and it hereby is AFFIRMED.

Plaintiffs-appellants Abraham Friedman, Eliazar Bloshteyn, and Sofiya Bloshteyn, are members of a class action brought against various Swiss banking institutions and entities (the "Swiss Banks") to obtain redress for their various actions in profiting from the Holocaust. They appeal from the November 22, 2000 order of the district court approving the Special Master's plan to allocate $1.25 billion in funds that have been obtained through an extensive settlement agreement that was entered into by the parties and approved by the district court.

Members of the class—who are by definition Jewish and non-Jewish persons that either were victims or targets of Nazi persecution or performed slave labor for Swiss corporations and their heirs—were allocated to one or more subclasses: the "Deposited Assets" class (those who claim ownership of deposit accounts withheld by the Swiss Banks after the War); the "Looted Assets" class (those who claim their property was looted by Nazis and then disposed of through the Swiss Banks); the "Slave Labor I" class (those who performed slave labor for German corporations whose profits were deposited with the Swiss Banks); the "Slave Labor II" class (those who performed slave labor for Swiss corporations); and the "Refugee" class (those who claim to have been denied entry into, expelled from, or mistreated while in Switzerland during the relevant time period).

After the settlement was approved by the district court as fair and reasonable, the district court appointed Special Master Judah Gribetz, Esq., to develop a plan to allocate and distribute the settlement proceeds. Appellants' objections to the resulting plan, as approved in the November 22, 2000 order, has prompted these appeals.

■ The district court has broad supervisory powers with respect to the administration and allocation of settlement funds, see Beecher v. Able, 575 F.2d 1010, 1016 (2d Cir.1978), and we "will disturb the scheme adopted by the district court only upon a showing of an abuse of discretion," In re "Agent Orange" Prod. Litig., 818 F.2d 179, 181 (2d Cir.1987).

■ Appellant Friedman has objected to the appointment of the Conference on Jewish Material Claims Against Germany, Inc. (the "Claims Conference") as one of the organizations that will process claims and distribute funds under the settlement. Friedman, who disagrees with the policies and mission statements of the Claims Conference, asserts that the Claims Conference is not suited to the task and that the district court failed to carefully consider the selection of the Claims Conference or to explore other organizations that might have been used instead.

We find no error in the district court's decision. The Claims Conference was chosen because of its lengthy experience with similar programs and because it had already been chosen to process claims and distribute funds under the related German Foundation "Remembrance, Responsibility, and the Future" settlement (the "German Foundation"), which shares many class members with the present litigation. The efficacy of having one organization process the claims of individuals entitled to recover from both programs cannot be gainsaid. Friedman argues that the district court might just as easily have chosen the International Organization on Migration (the "IOM"), which is also processing claims and distributing funds for the German Foundation. In fact, the IOM *was* chosen to process claims and distribute funds in this settlement: the Claims Conference will process the claims of Jewish class members for both programs, while the IOM will process the claims of non-Jewish class members for both programs.

Appellants Eliazar and Sofiya Bloshteyn object to (1) the inadequacy of the total settlement amount of $1.25 billion; (2) the allocation of $800 million to the "Deposited Assets" class, including adjustments for interest, fees, and inflation; (3) the application of the doctrine of *cy pres* to resolve the claims of the "Looted Assets" class, rather than require—or permit—claimants to put forth documentary evidence of their actual losses; and (4) the asserted limitation of "applications" to 560,000.

We note that the Bloshteyns—who successfully moved for reinstatement after their appeal had earlier been dismissed for failure to pay filing fees or timely move to proceed *in forma pauperis*—have arguably defaulted on their appeal because their letter brief was not filed until two weeks after the filing deadline and they failed to seek leave for an extension. In any event, we find that their claims lack merit.

■ The settlement sum of $1.25 billion, which was the result of more than a year of negotiations conducted among the parties and moderated by the district court, was premised in part on economic analyses that estimated the Jewish wealth likely to have flowed into Swiss banks on the eve of the Holocaust. The district court's approval of the sum after such extensive negotiations and considered analysis was not an abuse of discretion. We also find that the district court did not abuse its discretion in allocating $800 million to the "Deposited Assets" class. The existence and estimated value of the claimed deposit accounts was established by extensive forensic accounting. In addition, these claims are based on well-established legal principles, have the ability of being proved with concrete documentation, and are readily valuated in terms of time and inflation. By contrast, the claims of the other four classes are based on novel and untested legal theories of liability, would have been very difficult to prove at trial, and will be very difficult to accurately valuate. Any allocation of a settlement of this magnitude and comprising such different types of claims must be based, at least in part, on the comparative strengths and weaknesses of the asserted legal claims. *See In re "Agent Orange"*, 818 F.2d at 183–84 (approving equitable allocation of settlement funds based on "weigh[ing of] the relative deservedness" of the claims); *Curtiss–Wright Corp. v. Helfand*, 687 F.2d 171, 174 (7th Cir.1982) (holding that limited settlement fund requires allocation based on equitable principles such as the strength of competing claims). Finally, we assume that appellants' claim that they should be allowed to provide proof of their actual loss of property refers to claims of the "Looted Assets" class. While we find that their claim lacks legal merit, we note that counsel for the

plaintiffs-appellees has indicated in the context of an unrelated appeal that members of the "Looted Assets" class may be able to file such documentary proof of actual losses with the German Foundation.

We have carefully considered appellants' remaining claims and find them to lack merit. Accordingly, for the reasons set forth above, the judgment of the district court is hereby AFFIRMED.